JUSTICE TRIEWEILER
concurring in part and dissenting in part.
I concur with the majority’s conclusion resolving the first and third issues.
I dissent from the majority’s conclusion that Detective Brett Lund’s testimony regarding other alleged crimes committed by the defendant was harmless error.
I do not disagree with the majority’s recitation of the facts, nor its analysis of the law, which pertain to that issue. I do disagree with its conclusion that based on other evidence, and the court’s admonition to the jury, there is no reasonable possibility that the inadmissible evidence contributed to Walker’s conviction.
Walker was charged with and convicted of forgery. The jury was advised by a detective employed by the Billings Police Department that he had investigated Walker for the very same kind of crimes in the past and was familiar with him on that basis. Evidence that a person accused of a crime has committed similar acts in the past is among the most prejudicial types of evidence that can be offered. That is why evidence of prior acts is normally inadmissible. See Rule 404(b), M.R.Evid. That is why we have established procedural safeguards for consideration of such evidence, even when it falls within one of the exceptions to the general rule. See State v. Matt (1991), 249 Mont. 136, 814 P.2d 52.
Although there was other evidence from which the jury could have found the defendant guilty of forgery, the jury apparently did not consider the evidence conclusive, or it would not have bothered sending two notes to the District Judge in which they requested better equipment with which to view the bank’s video tape, and told the court that they had used a magnifying glass to view the still photos taken from the bank’s video tape. The jury’s uncertainty about the identity of the actual forger was apparently caused by the fact that Walker’s arms and hands were tattooed and no tattoos were reported by eye witnesses who observed the forger on the day in question.
*357 Furthermore, I would conclude that the District Court’s admonition, while well intended and consistent with our prior decisions, accomplished absolutely nothing. In fact, the course of events following Detective Lund’s improper testimony obviously emphasized its significance. First of all, Walker’s counsel was required to state an objection on the record; then the trial judge and attorneys retreated from the courtroom for a discussion outside the presence of the jury; and finally, upon their return to the courtroom the jury was instructed by the court to disregard Detective Lund’s previous testimony regarding prior involvement in forgery investigations. By that time, it had to be obvious to the jury that Detective Lund had inappropriately told them something very significant, otherwise the defendant and the District Court would not have been so concerned about it.
While there may be other circumstances in which a proper admonition to a jury could be effective, this was not one of them. The jury was simply told that the Billings Police Department had reason to believe that this person, accused of forgery, had forged other documents in the past. That was not the kind of information that could be erased from the minds of those entrusted with the responsibility for deciding Walker’s guilt.
For these reasons, I dissent from the majority’s resolution of Issue 2. I would conclude that because testimony was given regarding crimes allegedly committed by the defendant in the past without compliance with those procedural safeguards which we held were necessary in Matt, Walker was denied a fair trial and the District Court, therefore, abused its discretion when it denied his motion for a mistrial.